**Application of Norman A. ALTMANN and William H. Bureau.**

**Patent Appeal No. 7471.**

United States Court of Customs and Patent Appeals.

Nov. 10, 1965.

**390**

Fred S. Lockwood, Chicago, Ill., for appellants.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

SMITH, Judge.

We are required here to review the Board of Appeals' affirmance of the examiner's rejection of appealed claims 1–4 and 7 of appellants' application, serial No. 52,479, filed August 29, 1960, entitled "Method of De-Coating Paper." Claim 6 stands allowed by the Patent Office.

The appealed claims were rejected by the examiner as "lacking invention" over Altmann et al. in view of Myers.[1] This ground of rejection was affirmed by the Board of Appeals which held that the claims were "rejected as unpatentable over Altmann et al. in view of Myers."

The parties have argued, and we agree, that the rejection in this case is pursuant to the terms of 35 U.S.C. § 103. The issue for determination is thus whether appellants' method would be obvious to one of ordinary skill in the art in view of the references relied on by the Patent Office.

First considering appellants' invention, we find it is directed to a special preliminary treatment of coated wastepaper before this paper is subjected to fiber reclaiming treatment. It is asserted that the present invention is an innovation on appellants' two prior inventions which this court has previously considered in In re Altmann et al., 261 F.2d 606, 46 CCPA 730; and In re Altmann et al., 264 F.2d 894, 46 CCPA 818.

The appealed claims [2] set forth a method of de-coating coated wastepaper which has a coating which may be loosened in cool or cold water. The method comprises cutting the wastepaper into strips, preferably ½ to 1 inch wide, suspending the strips in a bath of cool or cold water, subjecting the suspended strips to an agitating action for a time sufficient to loosen the coating, and separating the strips from the bath.

The claimed method is said to remove a substantial portion of the coating while the wastepaper is still in the form of paper as distinguished from wastepaper that has been defibered. The principal object is to minimize the exposure of individual fibers to fine particles of coating and ink and thus avoid the alleged effects of the marked tendency for the

---

1. The references relied on in support of the rejection are:

Myers    2,703,754    March   8, 1955
Altmann et al. 2,916,412    December 8, 1959

2. Claim 1, which is illustrative of the above method, reads as follows:

   1. The method of de-coating coated wastepaper having a coating loosenable in cool or cold water which comprises

agitating a mass of coated wastepaper cut into pieces and suspended in cool or cold water for a time sufficient to loosen the coating so that a substantial portion thereof can be washed off but not long enough for the original cut pieces to be appreciably reduced in size and for substantial defibering to occur, and removing said loosened coating with water.

central canals of the individual fibers to absorb coating and ink particles.

The additional appealed claims specify such refinements as reagitating the strips in clean water, washing the strips after agitation, agitating the strips while in "bunches," and slitting coated magazines in a direction parallel to the binding. Appellants do not argue that any of the appealed claims are patentable in the absence of a finding that claim 1 is patentable. Our disposition of claim 1 is therefore dispositive of the appealed claims.

Considering the references, first Myers discloses a process whereby the wax in waxed wastepaper may be economically recovered for reuse and the dewaxed wastepaper may be obtained in a form readily available for reuse in the production of further paper products. The process, as related to reclaiming the paper, is comprised of the following steps: cutting the waxed wastepaper into "paper chips," preferably ½ inch wide and 2½ inches long; immersing the paper chips in a specific wax solvent which is maintained at a given temperature and pressure so as to dissolve the wax; and removing the paper chips from the solution of solvent and wax.

Myers discloses that his process is of a continuous nature. After removing wax from the "paper chips" via the solvent, the solvent is run through a decolorizing filter and a wax-solvent separator before reuse in dewaxing further wastepaper. Decoloring is necessary to remove the particles of ink released into the solvent when treating a waxed wastepaper having printing thereon. In addition, Myers discloses a chemical deinking step which may be added to the method described above.

In Myers, continuous reference is made to the fact that the wastepaper is treated without being fiberized in both the wax removal and deinking steps. Thus, Myers states:

By the process of the present invention, waxed paper waste, including waxed printed waste, * * * may be converted to a high grade paper-making stock free from wax, and containing undamaged, bright white fibres, comparable in quality to bleached commercial wood pulp and, at the same time, the wax may be recovered * * *.

* * * * * *

* * * In no event, however, is the interfelted structure of the paper destroyed; in other words, the paper is not fiberized. * * *

* * * * * *

* * * the color is removed from the paper, still material in paper form, i. e., unfiberized * * *.

The second reference relied on by the Patent Office, Altmann, describes a method of deinking wastepaper in cool or cold water without the use of chemicals so as to reclaim a large percentage of the fiber content thereof as clean pulp suitable for reuse in paper making. The Altmann reference was relied upon by the board simply to show that deinking wastepaper in cool or cold water is old in the art.

The board's position is as follows:

It is our view that since the concept of removing coating from strips of coated paper without defiberizing the paper is old as evidenced by the Myers patent, it would be obvious to one of ordinary skill in the art to apply this concept to coated wastepaper having a coating loosenable in cool or cold water in view of the Altmann et al. patent which teaches treating coated wastepaper with cool or cold water for the purpose of removing inks and coatings.

The appellants argue here that, "Obviously, the board did not bother to trouble itself as to where the concept (i. e., desire) of removing the coating without defibering originated. This was a key concept originating with appellants and was not taught in any of the prior art."

We agree with the board. What appellants term the "key concept" of their invention is disclosed in Myers and we believe it would be obvious to one of ordinary skill in the art to modify the Myers process to that claimed by appellants.[3]

The decision of the board is affirmed.

Affirmed.

3. Appealed claims 2 and 3 claim a method of decoating and *deinking* wastepaper in strip form. The modification in these claims to include deinking is also believed obvious in view of Myers' disclosure of a decolorizing filter to remove ink particles *prior* to chemical deinking, if such is needed. Myers discloses some deinking and appellants do not claim complete deinking. Appellants specifically state that their claimed method is intended as a "special preliminary treatment of coated wastepaper before it is subjected to the fiber reclaiming treatment" as specified in Altmann, a method for deinking wastepaper.